■ S.P. Duggal Corp., Doing Business as Duggal International, et al., Appellants, v Aetna Casualty and Surety Company et al., Respondents.—Order and judgment (one paper), Supreme Court, New York County (Beatrice Shainswit, J.) entered June 29, 1990, which, *inter alia,* granted partial summary judgment to defendant Aetna dismissing so much of plaintiffs' complaint as seeks to recover damages with respect to merchandise shipped to plaintiffs prior to May 9, 1985, severed the remainder of the action and transferred the same

action to the Civil Court, unanimously affirmed, without costs or disbursements.

Plaintiffs are four affiliated, family-run enterprises engaged primarily in the importation of retail ladies sportswear, which obtained from defendant Aetna a "MARINE OPEN CARGO POL-ICY" to insure against loss of merchandise shipped on or after May 9, 1985. The policy contained, as is customary in the trade, an additional warehouse coverage endorsement which, in consideration of an additional premium, extended the policy to cover imported merchandise "which is the property of the Assured or [in] which the Assured has an insurable interest (and has been insured thereunder during importation) while such merchandise is temporarily held, segregated in its original form or package in such a way that it can be identified in a warehouse". It is undisputed that a loss to imported merchandise due to a sprinkler leak occurred in storage at plaintiffs' mid-Manhattan office. Aetna determined from the documentation submitted that the value of the damaged imported merchandise shipped after May 9, 1985 was $22,931. At issue is the liability, if any, of defendant for the balance of plaintiffs' $910,428 claim for imported merchandise shipped prior to May 9, 1985. Plaintiffs posit that the lack of an attachment date on the warehouse endorsement and the fact that defendant placed the words "and [which] has been insured thereunder during importation" in parentheses after the words "or [in] which the Assured has an insurable interest" and not after "which is the property of the Assured", which immediately preceded the former, creates ambiguity so that coverage applies to the entire warehoused inventory, including shipments prior to the attachment date of the policy.

Traditionally, marine cargo insurance does not attach to any risk prior to the loading of the insured cargo on board the shipping vessel. *(Hillcrea Export & Import Co. v Universal Ins. Co.,* 110 F Supp 204, 207, *affd* 212 F2d 206, *cert denied* 348 US 834.)* This court has stated in a factual setting similar to that in the instant case, "Before the rules governing the construction of ambiguous contracts are invoked, the court must first find an ambiguity in the policy." *(Pali Fashions v New Hampshire Ins. Co.,* 158 AD2d 360, 361, citing *Breed v Insurance Co.,* 46 NY2d 351, 355.) We held there that the warehouse endorsement did not extend coverage to goods shipped prior to May 16, 1985, the date the policy attached, stating that the endorsement "clearly extended to only those goods that had been insured by the policy for the import voyage". *(Pali Fashions v*

*New Hampshire Ins. Co., supra,* at 361.) Plaintiffs' claimed distinction between the assured's property and goods in which he has an insurable interest reflects a distorted view of the policy, is belied by the policy's plain meaning and is at odds with a policyholder's reasonable expectations. That plaintiffs understood the true meaning of the endorsement is best reflected by the fact that when they prepared the first report of values submitted by them pursuant to the endorsement's reporting clause on September 16, 1985, after the loss, they did not list a single shipment prior to May 9, 1985.

Furthermore, in construing an endorsement to an insurance contract, the rules of construction require that the entire contract, both the policy and the endorsement, be read and examined together. *(Thompson-Starrett Co. v American Mut. Liab. Ins. Co.,* 276 NY 266, 270.) Under such an analysis, there is no ambiguity. Clearly, it was the intent of the parties that only imported merchandise shipped on or after May 9, 1985 was to be insured and that the policy's inception date, May 9, 1985 control the endorsement. Accordingly, partial summary judgment was properly granted. Concur—Sullivan, J. P., Kupferman, Ross and Kassal, JJ.